## Parshall's Appeal.

1. Henry died leaving a widow and children, two of whom were minors. The widow and adults agreed to sell to Parshall the administrator oil land of decedent for $7000, the vendors "on or before the 1st of July each to receive the legal portion of said sum as heirs to the same, then this contract to be of full force and virtue otherwise to be void and of no effect;" the vendors at the same time gave the administrator a power of attorney to sell. *Held*, that time was of the essence of the contract.

2. Parshall, without paying the vendors, having sold for a larger sum after July 1st, was bound to account to them for the larger sum.

3. Parshall was brother of the widow and uncle of the children. He stood in such relation of confidence to them, as required him to show affirmatively, that his conduct had been perfectly fair and open and that the demand for the property in the market was communicated to them.

4. Having failed to pay the $7000 at the day or to procure an extension of time, he was no longer vendee but administrator and agent, acting in the sale by him for the estate.

5. After the sale by Parshall, in order to perfect the title he procured a sale of the land to his vendee under a judgment which was against the decedent, and under an agreement that whatever his vendee should give at sheriff's sale should be credited on the contract price. *Held*, that Parshall might be charged in his administration account with the whole sum received by him as if it had been paid to the sheriff, and the balance after paying heirs had been paid to him as administrator.

6. The heirs could not be put to their common-law action against him.

7. The doctrine of Fisk *v.* Sarber, 6 W. & S. 18, does not apply where the judicial sale is brought about by the trustee.

8. A trustee or agent making a private sale and arranging that his vendee shall become the purchaser at a judicial sale, must answer to his cestui que trust for the amount *actually* received.

9. The heirs gave receipts for their proportion of the $7000, as on the contract. *Held*, that they were not estopped unless the facts were fully communicated to them.

10. Parshall sold land of his own and the decedents' as a whole for a gross sum, and received $2000 of the purchase-money in stock. *Held*, that he was not chargeable with the highest price of the stock, but with the sum only for which it had been received.

11. If the entire purchase-money had belonged to the estate, Parshall would have been liable for all he could have made by the sale of the stock.

12. Where a trustee receives a sum in gross to part of which he is entitled individually and accepts stock or securities in his own name in part payment, it is an unequivocal indication that they are taken for the part which is his own.

13. He cannot require his cestui que trust to receive any part of such stock or securities.

March 31st 1870. Before Thompson, C. J., Agnew, Sharswood and Williams, JJ. Read, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Warren county:* In the estate of Robert H. Henry, deceased. No. 338, to January Term 1870.

Henry, the decedent, in his lifetime, owned a tract of land in Deerfield township, Warren county, containing about 365 acres. To December Term 1859 Samuel Grandin recovered a judgment against him for $479.45. On the 11th of February 1860, Henry

[Parshall's Appeal.]

entered into an agreement that R. J. Brown should have the exclusive right to bore for oil on the whole tract, rendering to Henry one-twelfth of the oil. Henry died before February 1864, probably in the fall of 1863, intestate, leaving a widow Eliza and four children, James, Liza, wife of David A. Baker, and Livingston G. and and Lois, both of whom were minors. Administration of his estate was granted to James Parshall, who filed an inventory amounting to $70. The decedent's debts amounted to about $2000, of which about $1500, including the above judgment of Grandin, were liens. On the 7th of April 1864, the widow and the two adult children made a power of attorney to Parshall authorizing him to sell or lease their interest in the decedent's real estate for such price as he should think fit. On the same day the same persons of the first part entered into an agreement with Parshall of the second part as follows :—

" That for a consideration hereinafter mentioned, the party of the first part does hereby sell, and when the consideration hereinafter mentioned shall be paid, to convey by good and sufficient warrantee deed, all our interest of, in and to the following described piece or parcel of land * * * known as the R. H. Henry farm. * * *

" The consideration whereof, is, that if the party of the second part shall pay to the party of the first part on or before the 1st day of July, A. D. 1864, the sum of seven thousand dollars, each to receive the legal portion of said sum as heirs to the same, then this contract to be of full force and virtue, otherwise to be void and of no effect.

" And it is further agreed and understood, That whereas, the party of the first part has executed a full power of attorney bearing even date herewith to sell and convey the above described premises and to give a good and sufficient title for the same. That if the said party of the second part shall, under said power of attorney aforesaid, make sale of and dispose of the aforesaid premises for his own use, benefit and behoof, then in that case he shall pay to the said party of the first part the aforesaid sum of seven thousand dollars as stated above at the time aforesaid mentioned."

At the date of the power of attorney and agreement, Parshall himself owned a refinery in Tidioute and a tract, known as the " Cleland farm" adjoining the Henry farm, and containing about 63 acres. In May or June 1864, Parshall entered into a negotiation with J. W. Snedeker for the sale of his refinery and the Cleland farm and the Henry farm, the three to be sold together ; the negotiation resulted in a conditional sale of the whole for $18,000 ; the conditions were that Snedeker's partners should approve of the contract, and that other persons to whom Parshall had given the refusal should not accept within a week. This bargain was afterwards consummated by an absolute sale at the sum above stated which was to be paid cash. The title of the

Henry farm being encumbered with the lease to Brown and also with the liens above mentioned, in order to pass a clear title to Snedeker it was determined to have this farm sold at sheriff's sale under the Grandin judgment which had been entered before the date of the lease. Accordingly on the 14th of July 1864, Parshall suggested the death of Henry on the record, and substituted his name as administrator. On the same day a fi. fa. was issued, and Parshall waived an inquisition. On the 15th of August, the Henry farm was sold by the sheriff to Snedeker for $2200 under an understanding with Parshall, that whatever sum Snedeker should pay at that sale was to be credited on the whole purchase-money of $18,000. The sheriff's deed was acknowledged September 7th, and on the same day J. L. Grandin was appointed guardian of the two minor children of Henry. About the last of September, the whole property purchased by Snedeker passed into the hands of The New York and Allegheny Oil Company, which had been organized on the property; the par value of the stock was $5 per share. Parshall received 1000 shares of this company at $2000, the remainder of the consideration, except Snedeker's bid at the sheriff's sale was paid to Parshall in cash.

Parshall afterwards made payments to the widow and heirs for which he took receipts as follows:—

"1075.00.            "Tidioute, September 19th 1864.

"Received of James Parshall one thousand and seventy-five dollars, to apply on land contract.            ELIZA HENRY."

"Received, October 8th 1864, of James Parshall, administrator of R. H. Henry, deceased, eight hundred dollars, moneys made out of R. H. Henry's, deceased, estate, of which I am an heir, to apply on contract with him for same estate.

"BETSY BAKER,
"DAVID BAKER."

"Received, October 10th 1864, of James Parshall, sixteen hundred dollars, for Grandin and L. L. Henry, heirs of R. H. Henry, deceased, being money made out of sale of R. H. Henry's property.            J. L. GRANDIN."

"$525.00.            "Tidioute, October 15th 1864.

"Received of James Parshall five hundred hundred and twenty-five dollars, cash, made out of the estate of R. H. Henry, deceased, as an heir of said estate.            ELIZA HENRY."

Grandin, the guardian, testified that he paid $800 to L. G. Henry, and that when it was paid L. G. Henry knew that he had received it from Parshall for the farm; the share of Lois, who died in her minority, he paid to her mother some before and some after her death. He also received from Parshall, on the 10th of October 1864, $800 to be paid to James Henry; witness shortly afterwards paid it to James, who knew where it came from.

[Parshall's Appeal.]

David McKelvey, Esq., who was appointed auditor to distribute the proceeds of the sheriff's sale, awarded to Parshall, as administrator, &c., of Henry, the sum of $779.26.

To September Term 1866, James Henry, Baker and wife, L. G. Henry and Lois Henry brought an action of ejectment against the New York and Allegheny Oil Company for the Henry farm. On the 20th of the same month James Henry signed and filed in that suit the following paper:—

"Inasmuch as I have disposed of all my interest in the land claimed in the above suit, and have no interest in or claim to the same, and never authorized any person to bring suit for me, I hereby discontinue the above suit so far as it relates to me."

On the 3d of November 1866, in answer to a citation, James Parshall filed his administration account, in which he charged himself with $849.26, composed of the inventory and the proceeds of the sheriff's sale. Amongst other credits were these:—

1866 June 2d.    James Henry, heir    .     .     .     .    $80
  "    "    "      L. G. Henry, heir    .     .     .     .     40

The account showed in his hands a balance of $555.03.

The account was confirmed nisi December 3d, and on March 11th 1867 the heirs filed exceptions: that the accountant had neglected to charge himself with goods, &c., which were not included in the inventory; that he had received a large amount of money, stock in incorporated companies, and other property of great value, being the proceeds of real estate sold, above the amount he had charged himself with, and profits from the use of and productions of real estate, and from dividends in stock, &c., and otherwise, with which he has not charged himself; also that the account required general examination and revision. The account was referred to Isaac S. Alden, Esq., "to examine, settle and adjust."

The auditor heard testimony, including much bearing on the question of the value of the property belonging to Parshall personally, compared with the Henry farm.

In a report examining with much care the facts and the law of the case, he found the facts as above stated, and further reported:—

* * * "The contract and power of attorney together are one and the same transaction. The accountant claims that he made the sale hereinafter mentioned of the 265 acres of land aforesaid, under the said contract and power of attorney, and that he is liable to account only to the estate for the $7000 therein mentioned. But the auditor is of opinion that this claim of the administrator is groundless for the following reasons among others: Because neither L. G. Henry nor Lois Henry, the minor children, were parties to the contract and power of attorney, nor had they any guardian or other person competent to bind them

as parties thereto.  Nor did the widow, Eliza Henry, or Betsey Baker or James Henry, by the said contract and power of attorney, assume to act for the said minor children, but for their respective interests alone.  Nor was there at any time any person competent to ratify any such arrangement for or on behalf of such minor children.

"The auditor is also of the opinion that the contract and power of attorney was not at the time of the consummation of the sale hereinafter mentioned operative to bind the interests of the parties who signed it for the following reasons : First, the said contract and power of attorney manifestly were based upon the supposition that Parshall was to make private sale of the interests of Eliza Henry, Betsey Baker and James Henry, and no sale ever was made by Parshall under the power of attorney or the contract.  The evidence shows that at the time Parshall commenced negotiating the sale to Snedeker, and after the making of the contract and power of attorney, he had a negotiation with other parties for a private sale, but that was never consummated. And it may have been with reference to such expected sale that the power of attorney was given and contract executed.

"But second, whether it was or not, by the express terms of these papers they were to be null and void unless the sum of $7000 should be paid to said Eliza, Betsey and James by the 1st day of July, A. D. 1864.  And it is not pretended that any sum of money was paid to them or either of them until long afterwards.  Third, Parshall himself does not appear to have regarded this contract and power of attorney as a subsisting agreement. When he files his administration account he does not charge himself with, or make mention of the $7000 which he was clearly bound to charge himself with, so far at least as the minor children were concerned, even if the claim he sets up as to those of full age who signed the papers was correct.  Fourth, there is no evidence that Eliza Henry, Betsey Baker or James Henry, after the 1st of July 1864 did, either expressly or by implication, extend the time for the sale under the power of attorney and contract. Fifth, the receipts for moneys paid to Eliza Henry and Betsey Baker and J. L. Grandin, hereto attached, afford to the mind of the auditor no evidence from which it can be inferred that the parties intended thereby to revive the agreement and power of attorney of the 7th of April, A. D. 1864.  On the contrary the receipts upon their face bear testimony that when they were written and signed, no such thing was intended by the parties signing them.  Nor does the parol evidence afford justification for any such conclusion.  And in this connection the auditor calls attention to the receipt signed Betsey Baker and David Baker, dated October 8th 1864.

"For the foregoing reasons the auditor rejects the claim of

Parshall that he is liable only to account for the money specified in the contract and power of attorney of the 7th April 1864, and comes to the conclusion that Parshall, the accountant, is legally chargeable in his administration account with all the funds received by him from the sale of the land hereinafter set forth. * * * The general exception which affects the whole case, and upon which the others mainly hinge is this, viz., that Parshall, the administrator, has not accounted for the proportionate share of the $18,000 which rightfully belongs to the estate; the auditor reports that, in his opinion, this exception is well taken, and that Parshall, the administrator, is legally chargeable, and should account to the estate of R. H. Henry for the proceeds received from the sale of the Henry farm of 265 acres, the Cleland land of 63 acres, and the refinery in the proportion that the Henry land, the Cleland land, and the refinery respectively bear to the whole proceeds received by Parshall from the sale.

" The auditor was and is, well acquainted with the refinery, and from the evidence he thinks a fair price therefor, taking the weight of the testimony, would be $3500, and he fixes that amount of its value, leaving the amount received from the two pieces of land $14,500.

" As to the relative value of these lands, * * * the testimony is so uniform and general that the two pieces were of the same value, acre for acre, that the auditor accepts that as the basis of value. This would give to the Cleland piece the sum of $2785.71, and leave, after deducting that amount, and the $3500 for the refinery, the sum of $11,714.93 as the proper proportion received by Parshall from the Henry farm, and for which he is accountable.

"Parshall took the responsibility as trustee of the estate of R. H. Henry, as well as for himself, to take in lieu of $2000 cash 1000 shares of the stock of the New York and Allegheny Oil Company, nominally representing $5000. This specific 1000 shares seem not to have been kept distinct from other stocks to quite a large amount owned by Parshall in the same company, he, as the evidence shows, buying and selling the stock of the company quite extensively, and all the time owner of a much larger amount than the 1000 shares aforesaid.

" The 1000 shares of the stock for a time after the sale had not much value, but afterwards it advanced to about four dollars per share, at which price Parshall could have disposed of them.

" A fair average valuation of the stock, the auditor thinks, would be about two dollars and fifty cents per share, or, if Parshall still holds the same, he is still a stockholder to a much larger amount than the 1000 shares, he may be obliged to account to the estate for the proportionate amount of all dividends received by him from the same, which dividends the auditor finds amounted to $2500 up to July 1867. Whether any dividends

have been received by Parshall from this 1000 shares since July 1867 does not appear, nor does Parshall make any statement of the profits received by him from the stock; and it may here be stated that Parshall does not at any time before or after exceptions filed to his account, appear to have rendered any statement or information to the parties interested of how much he had received for the estate. The history of the facts attending the entire transaction of the sale of the 265 acre piece of land, the amount received by Parshall therefrom, and the details of the transaction were not voluntarily given by Parshall, but were drawn out by testimony, depositions, &c., taken by the exceptants to the account, and it seems to the auditor that Parshall in his suppression of the facts, or his silence in regard to them, has not discharged his duty to his cestui que trusts. He remained silent as to what he received from the Henry tract. He mingled the property of the estate of Henry with his own, and sold the whole for a gross sum, thereby disposing of sixty-three acres of his own lands, not treated by the purchasers or Parshall as valuable, and thereby disposing of a refinery which had not been in use for a considerable time; he takes stock in his own name in lieu of cash; he receives dividends thereon, and appropriates them to his own use; and he refuses to account for and denies his liability to account to the estate for the moneys received from Snedeker, and for the stock and dividends thereon.

"For these, among other reasons, the auditor is of opinion that the accountant is not entitled to any compensation for his services as connected with the estate; and further, that he is chargeable with interest on the balance in his hands, as hereinafter stated, the interest to commence one year from February 10th 1864, the time letters of administration were taken by him, he only filing an account after citation, and then only an imperfect one.

"But the auditor does not consider, with the counsel for the exceptants, that the administrator should be held rigidly for the highest market value of the stock while he held it, nor for the dividends derived from the stock. It was not an investment, proper, of trust-funds by a trustee in stocks or loans as a venture, but the closing out of an advantageous sale of property. Had the stock been a total loss, he would still have been liable to the estate for the amount for which he took it, viz. two thousand dollars, and hence the auditor thinks he should not be chargeable with a larger sum than two thousand dollars on account of the stock taken by him." * * *

The auditor stated an account on the principles of his report, as follows:—

"The whole amount received by Parshall from J. W. Snedeker

[Parshall's Appeal.]

proceeds of the Henry two hundred and sixty-five acres and the Cleland piece of sixty-three acres and the refinery.

| | |
|---|---:|
| " Cash, . . . . . . . | $16,000.00 |
| " One thousand shares stock in New York and Allegheny Oil Company in lieu of cash, . | 2000.00 |
| | $18,000.00 |
| " From which deduct refinery, .   $3500.00 | |
| " Proportionate value Cleland piece,   2785.07 | 6,285.07 |
| | $11,714.93 |

DR.

| | |
|---|---:|
| " Sept. 1864. To proceeds of sale of real estate, as above, . . . . | $11,714.93 |
| To amount of inventory of personal property, . . | 70.00 |
| | $11,784.93 |

CR.

| | |
|---|---:|
| " By amount of his account filed, less $80 paid James Henry, and $40 paid to L. G. Henry, which items are carried to distribution account, . . . . . | $184.23 |
| " By amount paid creditors in fi. fa. Grandin v. Henry's administrator, . . . | 1,447.01 |
| | $1,631.24 |
| " Balance in hands of the administrator from about last of September 1864 : . | 10,153.69 |
| | $11,784.93 " |

The auditor stated also a distribution account, first deducting for expenses of the audit $153.69; leaving for distribution $10,000; awarding to the widow during life and after her death to the heirs of the decedent (one-third), . . . . $3333.33

| | | | |
|---|---|---|---:|
| To James Henry, $1666.66 less | $880.00 | . | 786.66 |
| To Liza Baker,    "    " | 800.00 | . | 866.66 |
| To L. G. Henry,    "    " | 840.00 | . | 826.67 |
| To Lois Henry dec'd, "    " | 800.00 | . | 866.66 |

The administrator filed exceptions :—

2. The auditor has disregarded the evidence as to the value of the refinery, and found its value on his own knowledge to be $3500.

5. The proper basis of the calculation is, that each item of the property sold must be taken at its actual value as proven at the

[Parshall's Appeal.]

time of the sale, and if sold as a whole for more than the actual value, the excess is to be added to each item in proportion to its actual value as proven, and not to the Henry and Cleland pieces only, to the exclusion of the refinery, as the auditor has done.

9. James Henry filed no exception to the account, and, therefore, is no party to this proceeding, and not entitled to any portion of the funds.

The widow and heirs filed the following exceptions :—

1. That the conclusion of the auditor that the fair average value of the stock of the New York and Allegheny Oil Company, which was received by the accountant in lieu of $2000 cash, was only $2.50 per share, is not well drawn from the evidence, which shows that a fair average value was at least four dollars per share.

2. That the auditor should have charged the accountant, under the facts disclosed by the evidence, with the highest price for which the stock could at any time have been sold, which was at least five dollars per share.

3. That the auditor, under the facts disclosed by the evidence, should also have charged the accountant with the dividends on the stock received by Parshall up to July 1867, amounting to the sum of $2500; and should, also, have charged him with a sum sufficient to cover any dividends he may have since that time received down to the time of the audit.

4. That under the facts as disclosed by the evidence, the auditor should have charged the accountant with interest from September 1864, the time he received the money.

The court (Vincent, J.) decided that the administrator should be charged with the stock at $4.75 per share, and directed that on that account the sum of $2750 should be added to the balance found against him by the auditor.    The record entries are as follows :—

" February 12th 1870, exceptions of accountant overruled, auditor's report confirmed, and administrator surcharged with $2750. Decree of distribution made, and same day execution awarded.

" February 16th 1870, the judge, no court being in session, filed a farther decree—that accountant pay all the costs not provided in for the report of the auditor."

The administrator appealed to the Supreme Court and in a number of specifications assigned the decree for error.

*L. L. Wetmore* and *R. Brown*, for appellants—Time was not of the essence of the contract between Parshall and heirs : Decamp *v.* Feay, 5 S. & R. 323 ; Haverstick *v.* Erie Gas Company, 5 Casey 254.    The parties entitled under the contract received the amount due them respectively under the contract : this was a waiver; Shaw *v.* Turnpike Company, 2 Penna. R. 454. The administrator had a right to purchase at the sheriff's sale : Fisk *v.* Sarber, 6 W. & S. 27 ; Springer's Estate, 1 P. F. Smith

342; Moore's Appeal, 10 Barr 438; Fisher's Appeal, 10 Casey 29. The administrator is answerable for negligence, only when it amounts to wilful misconduct: Cassel & Spayd's Case, 3 Watts 443; Lamb's Appeal, 8 P. F. Smith 142; Lukens's Appeal, 11 Casey 356; Swartswalter's Account, 4 Watts 77; McCahan's Appeal, 7 Barr 57; Stehman's Appeal, 5 Barr 413. An administration account settles nothing but the basis on which distribution should be made: Ake's Appeal, 9 Harris 320.

*W. D. Brown*, for appellees.—The auditor's findings of fact are conclusive, there being no flagrant mistake: Miller's Appeal, 6 Casey 478; Riddle's Estate, 7 Harris 431; Mengas's Appeal, Id. 221. Accepting part of the proceeds of sale does not estop from claiming the balance: Rosenberger's Appeal, 2 Casey 67. The contract was not binding until the whole $7000 should be paid; there was till then no consideration: Bean *v.* Burbanks, 4 Shipley 458; Tucker *v.* Wood, 12 Johns. R. 190; Burnet *v.* Biscoe, 4 Id. 235; Winchel *v.* Latham, 6 Cowen 690; Hartley *v.* McAnulty, 4 Yeates 95. The contract was not binding because of the confidential relation in which Parshall stood to the other parties: Chorpenning's Appeal, 8 Casey 315; Wallington's Estate, 1 Ash. 307; Diller *v.* Brubacker, 2 P. F. Smith 504; Fisk *v.* Sarber, 6 W. & S. 28; Hall's Appeal, 4 Wright 409; Miller's Appeal, 6 Casey 478; Schoch's Appeal, 9 Id. 351. Compensation is paid only for faithful service: Swartswalter's Account, 4 Watts 77; McCahan's Appeal, 7 Barr 57; Wistar's Appeal, 4 P. F. Smith 60; Lamb's Appeal, 8 Id. 142.

An administrator must show what has become of the funds of the estate; unless he does so the legal conclusion is that he has used them, and hence liable for interest: Fox *v.* Wilcox, 1 Binn. 194; Estate of Merrick, 1 Ash. 305; Lukin's Appeal, 7 W. & S. 48. Every intendment is against a trustee who keeps imperfect accounts or none at all: Sandis *v.* Scott, 8 Casey 495; Stehman's Appeal, 5 Barr 413; Robinett's Appeal, 12 Casey 174; Holman's Appeal, 12 Harris 174.

The opinion of the court was delivered, May 5th 1870, by

SHARSWOOD, J.—A careful examination of the evidence attached to this record has not satisfied us that any plain mistake was committed by the auditor and the court below in the conclusions of fact at which they arrived. The mode suggested in the argument of the counsel of the appellant for apportioning the amount produced by the sale of the three items of property—the farm belonging to the heirs of Henry—and the Cleland tract and refinery belonging to the accountant,—which he sold together, is certainly ingenious, but there is nothing in the testimony to support it. It is very clear that the high price of the whole was obtained because

of its being oil territory, and that the Henry farm in that respect was by far the most valuable, and without it there probably could have been no sale of the rest. The refinery of course was entirely independent, and the auditor arrived at the value of that not on his own knowledge, but as he states from the weight of the testimony. The fact which he mentions that he was well acquainted with it certainly did not disqualify him from forming a correct judgment. The accountant has no reason to complain of the report in this particular.

We concur with the auditor and the court in thinking that under the circumstances the appellant was liable to account for the full amount of what he received from the sale of the real estate of the decedent. The agreement of April 7th 1864 certainly did not bind the interest of the minors, who were not parties to it; but looking at the subject-matter—a subject of speculation in an excited market—we think that time was made of the essence of the contract. This is strongly confirmed by the letter of attorney of the same date to the appellant to sell. It is not easy to see for what purpose that power was given, if the intention was an absolute and unconditional sale in the ordinary way. The consideration was to be paid on or before July 1st 1864, otherwise the contract was to be void and of no effect. Construing these two papers together, the agreement seems to have been that if $7000 were paid on or before the time stipulated, Parshall was to be the owner; but if not, then any sale made by him under the power was to be for the benefit of the heirs. It appears that at the time the contract was made Parshall had agreed that a purchaser should have the refusal of the property. At least he stated to Snedeker in May or June that he was under such an arrangement, and it certainly was incumbent on him to have produced that party, and shown when and for what price he had agreed. It is very doubtful whether a court of equity would have enforced the contract against those who signed it. Parshall stood in a relation of confidence towards them which made it necessary for him to show affirmatively that his conduct in the transaction had been perfectly fair and open, and that the demand for the property in the market was communicated to them. Be that as it may, when he failed to pay or procure an extension of the time on the 1st of July, he was no longer vendee but administrator and agent. When therefore he made the contract with Snedeker, he must be regarded as acting for the estate and the heirs whom he represented. To secure a good title he arranged with the purchaser that there should be a sheriff's sale under a judgment against the decedent, and that whatever he should be obliged to bid and pay in order to obtain such title should be credited on account of the agreed price. It is very clear that an administrator who takes this course may be rightfully surcharged in his account with the

[Parshall's Appeal.]

whole sum received by him, just as if that sum had been paid to the sheriff, and the balance after the payment of liens paid to him as administrator.   The heirs are not to be turned over to a common-law action against him for the amount.   The appellant contends, however, that according to the ruling of this court in Fisk v. Sarber, 6 W. & S. 18, and other cases, he could himself have become the purchaser at the sheriff's sale under the judgment; but the doctrine of that case must be received with the necessary qualification that the judicial sale has not been brought about by the act or procurement of the trustee.   Nothing is clearer than that if a trustee or agent with power to sell makes a private sale, and it is arranged that his vendee shall become the purchaser at a judicial sale which is to follow, he must answer to his cestuis que trust for the amount actually received, and not merely that at which it was bid off.   It would not have altered the case if Parshall himself had bought at the sheriff's sale and taken a deed to himself, if it could be shown that he had a previous contract under which a much larger price was paid for the property.   Under the facts as reported by the auditor the sheriff's sale in this case was resorted to simply to make a title to the purchaser under the contract, which had been before privately made by the appellant. Nor do we think that the heirs were estopped or concluded by their receipts.   In order to make them available for such a purpose, it was incumbent on the appellant to have shown that the facts of the case were fully known by or communicated to them. The same remark applies to the paper filed by James Henry in the ejectment suit.

But we think the learned court below erred in surcharging the appellant with $2750 on account of the stock received by him as part of the purchase-money of the entire property.   Even if he is to be held liable for the highest price of that stock at any time after the purchase, it ought to be added to the purchase-money and apportioned as well as the money received in cash.   It is to be recollected however that a considerable part of this purchase-money was indubitably Parshall's own—certainly more than the sum in cash for which this stock was taken.   He took the stock in his own name and mixed it with other stock of his own.   He never could have pretended to have a right to throw this stock upon the estate or heirs of Henry.   As administrator or as agent he had no right to accept it in payment.   It was no part of the original agreement that it should be so taken.   It was an investment by Parshall of that part of the purchase-money which belonged to himself.   It was in effect the same as if he had received the cash, and with it purchased the stock.   The auditor therefore, very properly we think, laid this investment out of view, and charged the accountant with the cash for which the stock was received. No doubt if the entire purchase-money had belonged to Henry's

estate, he might have been liable for all that he could have made at any time by the sale of the stock. But in a case so peculiarly circumstanced as this, where a trustee receives an amount in gross to part of which he is clearly entitled in his individual capacity, and accepts in part payment, stock or securities taken in his own name, it is an unequivocal indication that they are received for that part which belongs to himself.

Some other errors have been pointed out which may be corrected in the court below, as the record must be remitted that the account may be resettled according to this opinion. The award to Lois Henry, if she was deceased at the time, is of this character, as well as the order for costs if it was made when the court was not in session. The costs of the audit in the court below ought clearly to be borne by the accountant, but the costs of this appeal should be paid from the estate.

> Decree reversed and record remitted that a decree may be made in the court below conformable to this opinion.